UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FERNANDO SIMOES,      ]
      ]
    Plaintiff,      ]
      ]
    vs.      ]    6:08-CV-01384-LSC
      ]
WINTERMERE POINTE      ]
HOMEOWNERS ASSOC., INC.,      ]
      ]
    Defendant.      ]

MEMORANDUM OF OPINION AND ORDER

I.  Introduction.

The Court has for consideration motions for summary judgment filed

by Wintermere Pointe Homeowners Association, Inc. ("the HOA") (Doc. 49),

and plaintiff Fernando Simoes (Docs. 61, 63).[1]  Fernando Simoes sued the

HOA and individual association members for violations of 42 U.S.C. § 1981

("§ 1981"); the Fair Housing Act ("FHA"), 42 U.S.C. § 3617; and "declaratory

relief."  (Doc. 2.)  On October 28, 2008, this Court granted in part and

---

[1]On May 13, 2009, the HOA filed a motion to strike Plaintiff's motion for summary judgment as untimely.  (Doc. 64.)  In response, Plaintiff filed a motion asking the Court to consider his motion for summary judgment, notwithstanding its untimeliness, because the issues presented therein are the same as those in Defendant's motion.  (Doc. 65.) Plaintiff's motion for the Court to consider his motion for summary judgment is GRANTED; Defendant's motion to strike is DENIED.

denied in part the defendants' motion to dismiss. (Doc. 45.) Plaintiff's entire "declaratory relief" claim, and the § 1981 claim and FHA claim against the individual association members, were dismissed without prejudice. (*Id.*)

The issues raised in the parties' pending motions for summary judgment have been fully briefed and are ripe for review.[2] The Court also heard oral argument in this matter on June 26, 2009.[3] After full

---

[2]To the extent Plaintiff's motion for summary judgment and response to Defendant's motion for summary judgment (Docs. 61, 63) sets forth facts not contained in the evidentiary record, those facts are STRICKEN. For instance, Plaintiff "affirms that individuals residing [in one of the properties at issue in this case] were Ilson and Elslaine Batista, prior to the foreclosure thereof." (Docs. 61, 63 at 4 n.2.) Plaintiff does not cite evidence in the record to support this statement. This assertion, and others like it, are not admissible evidence before this Court. At the end of the motion and response, Plaintiff Simoes signs a "verification" swearing under penalty of perjury that the foregoing representations are true and correct. (Docs. 61, 63 at 15.) Plaintiff can only testify to those facts that are within his personal knowledge. It is clear from the content of the motion and response that the legal arguments and conclusions are not facts within Plaintiff's personal knowledge. Moreover, Plaintiff does not indicate how he has personal knowledge regarding any of the additional factual representations. If the Batistas lived in the house in question, Plaintiff himself testified that he never met them and had no idea if they were Brazilian or South American. (Pl. Dep. at 49-50.) Therefore, the "verification" at the end of Documents numbered 61 and 63 is STRICKEN. Plaintiff's signature does not convert a legal memorandum into evidence.

[3]Following oral argument, the Court informed the parties that they could each file a five-page supplemental memorandum of law. The Court instructed the parties that they could argue points of law or answer questions that arose during oral argument, but this was not the time to submit new evidence. Plaintiff's supplemental memorandum, however, introduces four new evidentiary exhibits, including an affidavit of the plaintiff's wife. (Doc. 74.) Defendant filed a motion to strike the entire submission for

consideration of the arguments and evidence presented, it is the opinion of this Court that Defendant's motion for summary judgment is due to be granted in all respects, and Plaintiff's motion is due to be denied.

II.    Facts.[4]

Plaintiff Fernando Simoes, a Brazilian, owns a home in the Wintermere Pointe Subdivision in Orange County, Florida.  A fence ("the Fence") runs immediately adjacent to Plaintiff's home and three other homes in the subdivision.  The Fence was constructed as a barrier to a water retention area.

At the time relevant to this action, the owners of two homes along the Fence were Janice Buxbaum and Evelyn Vazquez-Soto.  Vazquez-Soto testified that she is from Puerto Rico and has a noticeable Puerto Rican

_____

failure to follow the Court's instructions.  (Doc. 76.)  Defendant's motion is GRANTED; to the extent Plaintiff's supplemental memorandum seeks to introduce new evidence and references said evidence, it is STRICKEN.  The Court notes, however, that even if it did not strike the new evidence submitted by the plaintiff, none of the exhibits change the outcome of this decision.

[4]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

accent. (Vazquez-Soto Dep. at 56.) Buxbaum testified that her parents are Puerto Rican, but "[n]obody knows that. And by all the legal documents [the HOA has], my maiden name [,Rodriguez,] is not on anything." (Buxbaum Dep. at 33.) Buxbaum also stated that she does not have a Puerto Rican accent. (*Id*. at 22.) The owner of the fourth home on the Fence was a Brazilian family; however, at some point—either during the period relevant to this proceeding, or before—the family abandoned the home and Novastar Mortgage, Inc. ("Novastar"), foreclosed on the property.

The HOA is a Florida not-for-profit corporation that operates in, and owns the common elements of, the Wintermere Pointe Subdivision. Michael Gruszka, Carl Radcliffe, Robert Stumbaugh, and Michael Piatek were officers of the HOA at all times material to the claims in Plaintiff's Amended Complaint.

In approximately February 2007, the HOA, through its management company, Sentry Management, Inc. ("Sentry"), sent a notice to Plaintiff regarding his alleged failure to maintain the Fence on his property. On or around June 15, 2007, Plaintiff received a second notification from Sentry

about the Fence.  The owners of the three other properties along the Fence also received notices regarding their alleged failure to maintain the Fence.

In August 2007, Plaintiff, Vazquez-Soto, and Buxbaum attended a meeting of the HOA to discuss the citations they received about the Fence. At the meeting, Buxbaum argued with Gruszka about the Fence, and Plaintiff also spoke, saying he did not believe he was responsible for maintaining the Fence.  During that meeting, Gruszka referenced Brazilian families abandoning their homes and thereby creating a lot of problems for the HOA.  (Pl. Dep. at 45.)  Gruszka did not mention Plaintiff's name or family when he made this statement.  Plaintiff testified that he had "no clue" if Gruszka knew that he was Brazilian (Pl. Dep. at 51), but he believed that Gruszka did know because he looked at him while making the statement about Brazilians (*id*. at 79-80).

Plaintiff also attended other HOA meetings to try to address the issue of the Fence.  He maintains Gruszka treated him rudely—cutting him off and telling him he did not want to hear anymore.  Simoes also maintains that he was asked to repeat himself over and over, and told that the HOA members could not understand what he was saying.  Plaintiff does not specify which

members told him that they could not understand him.  Plaintiff speaks with a pronounced accent.

On or around September 10, 2007, Plaintiff received a third and "final" notice about maintaining the Fence.  In October and December 2007, Plaintiff also received letters from the HOA's corporate counsel about the Fence.  Plaintiff indicated that he was told he could repair and paint, replace, or take down the Fence; Simoes did not take any steps to do any of these things.  Instead, Plaintiff took the position that no repairs were needed and the Fence was not on his property.

After Buxbaum received notice of potential litigation regarding the Fence, she painted and repaired her portion.  Vazquez-Soto chose to remove parts of the Fence with a chainsaw when she received her citations.

On March 11, 2008, the HOA commenced formal litigation ("the Lawsuit") against Plaintiff in the Circuit Court of Orange County, Florida, to force Simoes to repair and repaint the Fence.  On March 11, 2008, the HOA also filed suit against Novastar, owner of the abandoned property, regarding alleged failure to maintain the Fence and the property in general.  In the

latter case, final judgment was entered in favor of the HOA on June 10, 2008.

In Plaintiff's state court litigation, final judgment was entered in favor of Simoes on March 11, 2009. The Circuit Court held that the HOA had not proven any part of the Fence belonged to Plaintiff. The court also held that Simoes had proven the defenses of selective enforcement, laches, and waiver. However, the Circuit Court concluded that the defense of unlawful discrimination had not been proven, stating:

> [T]here was clear evidence Plaintiff was insulted, demeaned and poorly treated by the former Board. It is unclear what the basis for that treatment was. Perhaps some or one of the Board members did harbor some prejudice toward Defendant. Perhaps any homeowner who had the temerity to question decisions of the particular Board could expect such treatment.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the

nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

    A.    42 U.S.C. § 1981.

"In order to make out a *prima facie* case of non-employment discrimination sufficient to withstand a motion for judgement as a matter of law under section 1981, a plaintiff must establish that (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (in this case, the making and enforcing of a contract)." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000).

Defendant disputes that Plaintiff has adduced sufficient evidence to establish that the HOA acted with the intent to discriminate because of Plaintiff's Latin American race.[5] Plaintiff counters that proof of "intentional

---

[5]Simoes concedes that he cannot pursue a § 1981 claim based on his Brazilian national origin.  Defendant has not disputed that discrimination based on an individual's ethnicity—here, Latin American—is cognizable under § 1981.  *See Saint Francis Coll. v.*

discrimination" is not necessary (Docs. 61, 63 at 9, 11); points to Gruszka's "offensive comments" (*id*. at 9); and argues that only Latin American homeowners in his neighborhood were cited or sued for failing to maintain their fences (*id*. at 10, 12-13).  Simoes also invokes the decision of the Circuit Court of Orange County, Florida, which concluded that Plaintiff had proven the defense of "selective enforcement" in the state court litigation.

 1.  Intentional Discrimination is Required.

In order to establish a § 1981 claim, proof of intentional discrimination is essential.  "Section 1981 liability must be founded on purposeful discrimination."  *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999).  Therefore, disparate impact evidence is insufficient to establish a § 1981 claim.  "[O]nly direct or inferential modes of proving intentional discrimination are available to the § 1981 plaintiff."  *Id*.

 2.  Comparative Evidence.

Plaintiff admits that he has not presented direct evidence of intentional discrimination.  He argues instead that the Court can infer unlawful discriminatory animus because all four homeowners cited by the

*Al-Khazraji*, 481 U.S. 604, 613 (1987).

HOA regarding the Fence were Latin American and no one else in the neighborhood was cited for a fence violation prior to March 2008. Simoes proffers photographs, taken on October 13, 2009, of around thirty-one fences in the approximately 200-home Wintermere Pointe neighborhood that he purports are out of conformity with the covenants and restrictions. This equates to about fifteen percent of the homes. Plaintiff then introduces a list of homeowners, which he claims shows that less than ten percent of the neighborhood is Latin American. Based on this evidence, Plaintiff wants the Court to conclude that there must have been non-Latin Americans with fences out of conformity with the covenants and restrictions, and the fact that four Latin American homeowners received citations regarding the Fence, and ultimately two were sued, indicates unlawful discrimination. (Docs. 61, 63 at 10-13.)

This purported "statistical" evidence, however, does not establish what Plaintiff must show. First, Plaintiff concludes that less than ten percent of the Wintermere Point neighborhood is Latin American by looking only at a list of surnames of homeowners in April 2009. The Hispanic names identified could belong to Latin Americans, individuals from Spain or

Portugal, or individuals descended from a Hispanic ancestor who no longer identify themselves as such. Moreover, individuals on the list with non-Hispanic names could, in fact, be Hispanic or Latin American. Buxbaum, herself, testified that she is one of those individuals. Plaintiff also has not identified to whom the non-conforming fences belong, or whether the non-conformities existed when he and his immediate neighbors received their citations. In short, without context and additional information, Plaintiff's "statistical" data is meaningless. *See, e.g., Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1255 n.2 (11th Cir. 2000); *Evans v. McClain of Ga, Inc.*, 131 F.3d 957, 963 (11th Cir. 1997) ("Statistics without an analytic foundation are 'virtually meaningless.'").

Furthermore, while Simoes maintains that notices regarding the Fence were issued only to Latin American homeowners, there is no evidence to indicate the HOA was aware Buxbaum is Latin American,[6] nor is there any

---

[6]Plaintiff has argued that he does not have to prove that the HOA had knowledge that Buxbaum was Latin American to establish that the HOA cited her and three other neighbors because of their Latin American race. The actual knowledge and actions of the HOA, however, are relevant to the Court's determination whether the HOA acted with unlawful discriminatory animus. *See Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1306 (11th Cir. 2002). If there is no evidence the HOA knew Buxbaum was Latin American, then no reasonable fact-finder could conclude that their decision to cite Buxbaum regarding the Fence was because she was Latin American. *See id.*

evidence provided to support the conclusion that the HOA sued Novastar, a corporation, because of Latin American animus.

To the extent Plaintiff seeks to compare the manner in which the HOA treated him with the way the HOA treated the alleged non-Latin American homeowners with non-conforming fences, the evidence also fails to show the requisite intent for a § 1981 claim. When a plaintiff compares individuals "to raise an inference of discriminatory motivation, the individuals must be similarly situated in all relevant respects besides race, since '[d]ifferent treatment of dissimilarly situated persons does not violate' civil rights laws." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1273-74 (11th Cir. 2004) (quoting *E & T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987)) (internal citation omitted). Plaintiff does not identify any specific, similarly situated, non-minority individual who was treated better in a similar situation.

### 3. Remarks.

Plaintiff also contends that Gruszka's offensive comments about Brazilians indicate that the HOA took discriminatory action against Simoes. (Docs. 61, 63 at 9-10.) However, Gruszka's statement about Brazilian

families abandoning their homes and causing problems for the HOA, assuming it shows animus toward Brazilians, is not indicative of discrimination based on Latin American ethnicity. At best, the statement may support a claim for national origin discrimination, but as discussed above and as conceded by the plaintiff during oral argument, national origin claims are not cognizable under § 1981. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).

Moreover, even if Gruszka's comments about Brazilians were indicative of Latin American animus, Plaintiff testified that the comment was not made during a discussion about the Fence, nor was it made in conjunction with the decision to send notices and ultimately initiate litigation regarding the Fence. Gruszka's statement was made while the HOA discussed Brazilian families abandoning their homes in the neighborhood—after the Fence citations were received by Simoes, a Brazilian; Buxbaum, a Puerto Rican; and Vazquez-Soto, a Puerto Rican. There is no evidence whether the Brazilian family who lived in the fourth home on the Fence received similar citations, or if they had abandoned the property prior to the notices being issued. There is also no evidence that Gruszka or the other members of the

HOA were aware that Plaintiff was Brazilian.[7]  Simoes testified that he assumed Gruszka knew he was Brazilian because Gruszka looked at him when he made the offensive statement about Brazilians.  The Court cannot make that assumption.  In this context, Gruszka's comments are insufficient circumstantial evidence to create a jury issue regarding Defendant's purported intent to discriminate against Plaintiff based on his Latin American race.

       4.    Res Judicata.

Plaintiff maintains, however, that this Court must enter judgment in his favor because the Circuit Court of Orange County, Florida determined that the HOA "selectively enforced" its rules against Simoes.  "To invoke collateral estoppel, a party must demonstrate four elements:

> (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

---

[7]*See* footnote 5, *infra*.

*Matter of McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989) (quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986)). "In an offensive collateral estoppel case a court must take special care to ensure that the defendant had a full and fair opportunity to litigate the issue in the other proceeding." *Id.* at 1567 (citing *Johnson v. United States*, 576 F.2d 606, 617 (5th Cir. 1978)). "Nevertheless, the elements necessary to invoke collateral estoppel are the same whether a party seeks to use it 'offensively' or 'defensively.'" *Id.* (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 n.16 (1979)). "The party seeking to invoke collateral estoppel bears the burden of proving that the necessary elements have been satisfied." *Id.* at 1566 (citing *Matter of Merrill*, 594 F.2d 1064, 1067 (5th Cir. 1979)).

The HOA chose to sue Plaintiff in state court, and there is no dispute that the HOA was given a full and fair opportunity to litigate the issue of "selective enforcement" in that venue. However, the matter before this Court is not whether selective enforcement occurred, but whether the basis for that selective enforcement was unlawful discrimination. The parties also litigated the issue of unlawful discrimination in the underlying

litigation, and the state court found it had not been proven. If any preclusive effect were to be given in this case to the state court's determination, therefore, it would be in favor of the HOA. Defendant, however, has not asked the Court to apply issue preclusion, and our findings in this case make a decision on the matter unnecessary.

B.    Fair Housing Act.

In his Amended Complaint Plaintiff also claims that the HOA violated § 3617 of the FHA through coercion and interference by selective prosecution in a civil suit based on his Latin American ethnicity or Brazilian nationality. Section 3617 states:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. Defendant does not dispute Plaintiff's contention that § 3617 prohibits both race and national origin discrimination.

1.    Disparate Treatment.

Very few courts have addressed the particulars of a § 3617 claim, and the law in this circuit is sparse. In the Eleventh Circuit, "the Fair Housing Act prohibits not only direct discrimination but practices with racially discouraging effects." *United States v. Mitchell*, 580 F.2d 789, 791 (5th Cir. 1978),[8] *quoted in Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1543 (11th Cir. 1994). However, it appears self-evident that a party cannot innocently and unintentionally "coerce, intimidate, threaten, or interfere with" a person's enjoyment of the rights protected by sections 3603-3606. The Seventh Circuit Court of Appeals held as much in *East-Miller v. Lake County Highway Dep't*, 421 F.3d 558 (7th Cir. 2005), when it concluded that "a showing of intentional discrimination is an essential element of a § 3617 claim." *Id.* at 563. And, the Eleventh Circuit's brief analysis of a § 3617 claim in *Sofarelli v. Pinellas County*, 931 F.2d 718 (11th Cir. 1991), appears to confirm that requirement. In *Sofarelli*, the court concluded that a § 3617 claim could proceed against certain individuals because the plaintiff had

---

[8]In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

introduced evidence suggesting they had "racial motivations" or "racial animus." *Id*. at 722. The plaintiff's claim against the sheriff, however, was rejected because there were no allegations the sheriff "acted with racial animus." *Id*. at 723. Thus, in order to prevail on a § 3617 claim under the FHA, Simoes must establish that race or national origin "played some role" in the challenged actions of the HOA. *Sofarelli v. Pinellas County*, 931 F.2d 718, 722 (11th Cir. 1991); *see also Mitchell*, 580 F.2d at 791.

Plaintiff's arguments in support of his FHA claim are similar to those made in support of his § 1981 claim. Plaintiff contends that: (1) only Latin American homeowners in the neighborhood were cited or sued for failure to maintain their fence; (2) only Brazilians were sued for failure to maintain their fence; (3) Gruszka's "offensive comments" are indicative of discrimination; and (4) the decision of the Circuit Court of Orange County, Florida, establishes selective enforcement occurred.

The Court has discussed and rejected Plaintiff's argument regarding the estoppel effect of the state court decision; it need not be repeated here. The Court also concluded above that Plaintiff's evidence is insufficient to show the defendant acted with Latin American animus when

it issued the citations and ultimately sued Simoes for purported failure to maintain the Fence. Similarly, the Court explained why Gruszka's comments about Brazilians, in the context of a discussion about Brazilian families abandoning their homes, were insufficient to show that the HOA's decision was based on Latin American animus. For many of those same reasons, the comments do not establish that the challenged actions of the HOA as a whole were made because of animus toward Brazilians. In fact, Plaintiff has failed to show that any member of the HOA had knowledge that he was Brazilian.

Plaintiff now contends that because formal legal action was taken only against Brazilians, he has shown national origin discrimination sufficient to establish his FHA claim. However, the evidence indicates that formal legal action was taken against Simoes and Novastar—not the Brazilian family who used to live in the home prior to foreclosure. Simoes cannot show a similarly situated non-Brazilian who was treated better in a similar situation. And, as discussed above, the statistical evidence Plaintiff attempts to use to prove this claim has insufficient analytic foundation to overcome his burden at summary judgment.

2.    Disparate Impact.

Finally, the Court notes that even if Plaintiff could establish his § 3617

claim through a disparate impact analysis, Simoes does not survive summary

judgment.  There are two ways that a plaintiff can establish discriminatory

effect under the FHA: (1) a plaintiff can show a decision has a segregative

effect, or (2) a plaintiff can demonstrate that a decision significantly affects

members of a protected group compared to members outside that group.

*Hallmark Developers, Inc. v. Fulton County, Ga.*, 466 F.3d 1276, 1286 (11th

Cir. 2006).  Simoes argues the latter.

"Typically, a disparate impact is demonstrated by statistics."  *Id*.

"Although no single test controls in measuring disparate impact, certain

guidelines have developed:

> First, it may be inappropriate to rely on absolute
> numbers rather than on proportional statistics.
> Second, statistics based on the general population
> should bear a proven relationship to the actual
> applicant flow.  Third, the appropriate inquiry is into
> the impact on the total group to which a policy or
> decision applies.
>     Whether the measure of disparate impact used
> is disproportional representation, in which the
> percentage of minority representation in the
> affected group is compared against that minority's

representation in the general population, or disproportionate adverse impact, in which the minority group's percentage representation in the affected group is compared against the majority group's representation in the affected group, the starting point is always the subset of the population that is affected by the disputed decision.

*Id*. (internal quotations and citations omitted).

Plaintiff has introduced evidence that only four households were affected by the HOA's disputed decision. According to the plaintiff, all four households that received citations regarding the Fence were Latin American. There is no other group to which this Court can make a comparison; therefore, there is no disparate impact based on race. Half of the Latin Americans cited were Brazilian by national origin; half were Puerto Rican. Therefore, there is no disparate impact based on national origin. It is also Plaintiff's contention that the two households sued by the HOA were Brazilian. Whether compared to the original four households cited or viewed as a separate group affected by a different decision, the statistics do not show a disparate impact. Moreover, when it is considered that the evidence actually shows only one Brazilian household was sued, and the

second property owner was a mortgage company, the percentages are even weaker for the plaintiff.

Simoes does not want to view the statistical evidence in this manner. He would prefer this Court consider the "minority representation in the affected group [with] that minority's representation in the general population"—here, the population of Wintermere Pointe Subdivision. However, as discussed above, the plaintiff has not provided the Court with reliable evidence of the composition of the Wintermere neighborhood by race or national origin at the time of the HOA's disputed decisions. Moreover, the Court is not convinced that those numbers, even if produced, would be statistically sound. If, in an employment discrimination context, the courts have concluded that applicant statistics should be tailored to include only those who are qualified for a job—and not all that apply, *see, e.g., In re Employment Discrimination Litigation Against State of Ala.*, 198 F.3d 1305, 1312 (11th Cir. 1999), then it seems that the Wintermere neighborhood numbers would also need to be tailored. For instance, did all the Wintermere properties have a fence? Did any of those fences actually require repair at the time relevant to this cause of action? Here, Plaintiff's

statistical evidence raises more questions than it answers. *See McCleskey*

*v. Kemp*, 753 F.2d 877, 889 (11th Cir. 1985).

Because Plaintiff has failed to present sufficient evidence showing that

race or national origin discrimination played any role in the HOA's disputed

decisions—or that those decisions had a significant discriminatory effect—the

HOA is entitled to summary judgment on Plaintiff's FHA claim.

V.    Conclusion.

For the reasons stated above, Defendant's motion for summary

judgment will be granted in all respects; Plaintiff's motion will be denied.

A separate order will be entered.

Done this <u>22nd</u> day of <u>July 2009</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297